Filed 8/25/20  P. v. Inman CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL WAYNE INMAN,<br><br>    Defendant and Appellant. | D076350<br><br><br>(Super. Ct. No. SCN320624) |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandell and Genevieve Hebert, Deputy Attorneys General, for Plaintiff and Respondent.

<u>2014 Sentencing and Direct Appeal</u>[1]

Following a bench trial in June 2014, the court found defendant Michael Wayne Inman guilty of unlawfully annoying and molesting a child under 18 years of age (Pen. Code,[2] § 647.6, subds. (a)(1) & (c)(2), count 1); and indecent exposure (§ 314, subd. (1), count 2). As relevant here, the court found true the allegations that defendant had previously been convicted of three prior strikes (§§ 667, subds. (b)–(i), 1170.12 & 668); and eight prison priors (§§ 667.5, subd. (b) & 668).

At defendant's October 10, 2014 sentencing, the court over the People's opposition exercised its discretion under *People v. Romero* (1996) 13 Cal.4th 497 (*Romero*), dismissed two of defendant's prior strike offenses, and imposed a term of 20 years in prison. Defendant's sentence consisted of the upper term of six years on count 1, doubled to 12 based on the strike prior, and a consecutive eight years for his eight prison priors. The court stayed under section 654, subdivision (a) the upper term of three years doubled to six on count 2. In sentencing defendant to 20 years, the court rejected the recommendation of probation that he be sentenced to 41 years to life, and the request by the prosecutor at the hearing that he receive 33 years to life.

On direct appeal, this court in *People v. Inman* (Sept. 11, 2015, D066916), 2015 WL 5301558) found insufficient evidence to support one of defendant's prison priors from another state, ordered his sentence reduced accordingly, but otherwise affirmed the judgment.

---

[1]   Defendant's conviction stemmed from him exposing himself in May 2013 to 16-year-old Natalia P., who was a passenger riding on the same city bus as defendant.

[2]   All further statutory references are to the Penal Code unless noted otherwise.

Defendant's Section 1170.91 Petition and His Arguments in this Appeal

In February 2019, defendant appearing in propria persona filed what the court treated as a petition for recall of his sentence (petition) under newly amended section 1170.91, subdivision (b)(1). The court appointed the Office of the Public Defendant to represent defendant. In connection with the July 18, 2019 hearing, defendant that same day filed a formal petition for resentencing.

The same judge who had sentenced defendant in October 2014 presided over the July 18 hearing. In denying the petition, the court found defendant was statutorily ineligible for such relief because in anticipation of his October 2014 sentencing, the issue of defendant's military service and the possibility he may be suffering mental health disorders as now described in section 1170.91 was fully vetted by the defense and was considered by the court in imposing the 20-year sentence on defendant. (See § 1170.91, subd. (b)(1)(A), discussed *post*.)

Defendant appealed.

In his opening brief, defendant argues the court erred in denying him relief under section 1170.91 because at his 2014 sentencing, the court allegedly only gave "cursory mention" to his service-related PTSD. Defendant thus argues the court erred in denying him a "full hearing" on whether he was entitled to resentencing under section 1170.91.

The People's Brief

In their respondent's brief, the People argue the order denying defendant's petition should be affirmed because defendant is statutorily ineligible for resentencing under section 1170.91 because his service-related PTSD was considered by the trial court in 2014 in granting him *Romero* relief. (See § 1170.91, subd. (b)(1)(A).) The People further argue that remand

3

in any event would be a futile act because the court in denying defendant's petition at the July 18 hearing noted it would not go lower than 20 years even if it could resentence defendant under section 1170.91.

In a footnote in their brief, the People submit that, although not raised by defendant in his opening brief, "it appears that six of the one-year prior prison terms that were applied to appellant's sentence are no longer valid" as a result of newly amended section 667.5, subdivision (b). As discussed *post*, this amended statute enhances a prison term by one year only if the prior prison term was for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).

In his reply brief, defendant argues that in addition to relief under section 1170.91, the court on remand should strike six of his seven prison priors under newly amended section 667.5, as suggested by the People.

We first turn to the order denying defendant's petition.

DISCUSSION

I

*Resentencing under Section 1170.91*

A. Guiding Principles

Enacted in 2014, former section 1170.91 created a mechanism for courts to consider mental health and substance abuse problems stemming from military service as a mitigating factor when imposing a determinate term under section 1170, subdivision (b).[3]  (See Stats. 2014, ch. 163 (Assem.

_____

[3]    As originally enacted, former section 1170.91 provided in part:  "(a) If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service, the court shall consider the circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170 . . . ."

Bill No. 2098), § 2, eff. Jan. 1, 2015.) Effective January 1, 2019, Assembly Bill No. 865 (2017–2018 Reg. Sess.) amended section 1170.91 to extend its application to a person "currently serving a sentence for a felony conviction."

Pertinent to this appeal, subdivision (b)(1) of section 1170.91 provides: "A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder [(PTSD)], substance abuse, or mental health problems as a result of his or her military service may petition for a recall of sentence, before the trial court that entered the judgment of conviction in his or her case, to request resentencing pursuant to subdivision (a) if the person meets both of the following conditions: [¶] (A) The circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service *was not considered as a factor in mitigation at the time of sentencing.* [¶] (B) The person was sentenced prior to January 1, 2015. This subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015." (Italics added.)

B. <u>Additional Background re: 2014 Sentencing in the Direct Appeal</u>

Before his October 10, 2014 sentencing, defendant, who then was 61 years old, filed a statement in mitigation and a request for relief under *Romero*. Defendant noted he was then facing a sentence of at least 25 years to life under the Three Strikes law and was ineligible for a grant of probation due to his criminal history. The mitigation statement included four attachments: defendant's probation report (exhibit A); his August 2014 psychological evaluation (exhibit B); family letters from Vickie U. and Steve (collectively, exhibit C); and a letter from defendant (exhibit D).

5

As particularly relevant here, defendant in the mitigation statement addressed his "complex history," including that he "is a Vietnam War veteran who suffers from post-traumatic stress disorder [PTSD], depression and anxiety. (Exhibit B). He takes a prescription drug to treat this issue and reports using it consistently when not in custody."

The mitigation statement went on, "In letters from his sister Vickie U[.] and Steve . . ., Mr. Inman's PTSD and relevant mental disability from service in Vietnam are clearly explained. While Mr. Inman may be a societal nuisance, the letters indicate that he has the support of family, a socially supportive outlet that can help him to get the treatment needed to minimalize his tendency to expose himself. (Exhibits C). Mr. Inman's own letter indicates that he would not be opposed [to] a term of commitment where he could receive medical treatment through a hospital. He indicates self-reflection, stating 'how sorry' he is that he exposed himself. The letter also indicates that his intent was not to hurt others when he exposed himself. Mr. Inman's letter also indicates the nature of the trauma he suffered while serving his country in Vietnam. This trauma led to his PTSD. He expresses a desire to find effective treatment for his condition and a strong desire to be able to go back to Salt Lake City to benefit from the support of his family."

The statement next turned to the Rules of Court and addressed the circumstances in mitigation including that defendant "was suffering from a mental or physical condition that significantly reduced culpability for the crime." (Cal. Rules of Court,[4] rule 4.423 (b)(2)(C).) Defendant thus requested the court strike one or more of his strike priors because his most recent conviction did not involve a violent or serious felony warranting a life term under the Three Strikes law.

---

[4] All further rule references are to the Rules of Court.

The probation report, exhibit A, under the rubric psychological and medical problems, referenced defendant's PTSD: "The defendant suffers from PTSD, depression and anxiety. He is currently taking Wellbutrin and stated that he is consistent about taking his medication as prescribed when not in custody." The probation report also noted that while in the Army in Vietnam, defendant used marijuana and LSD; and that also while in Vietnam, he "misused 'sterno,' nasal inhalers, heroin, Percodan and Percogesic 'because of the pain from headaches.' "

Defendant's August 2014 psychological examination showed that defendant was being treated for PTSD; that he dropped out of high school, joined the Army, and served in Vietnam; that his mental history showed the Veterans Administration (VA) had diagnosed defendant with PTSD; and that in 1994 he received inpatient treatment in San Diego as a result of being a "Vietnam Veteran[]."

The psychological report described a first-hand account of an event in Vietnam that contributed to defendant's PTSD: " 'I have so much guilt over the incident in Vietnam. We turned and ran. I could see bloody bodies of my friends, three guys we left there when we ran. I can't get over it.' " Defendant went on to note that he "stresses over this issue" and has "nightmares regarding it." The report concluded defendant had a "significant history of mental health problems," including for PTSD, depression, anxiety, and paraphilia indecent exposure.

Vickie, defendant's older sister, described her brother as a "typical teen" until he joined the Army at the age of 17 and was sent to Vietnam. In her August 13, 2014 letter addressed to the court, she writes: "There his assignment was driving an ambulance picking up dead people. Probably still doing drugs and maybe exposed to Agent Orange. I don't know. He also has

7

some sort of sinus headaches that caused him to have severe pain. He has told me horror stories about Nam and how he cannot even tell the doctors but he still sees it vividly he tells me. He started to get in trouble for dropping his pants when he returned home from Nam. Something horrific must have happened to him when he was in Nam, that caused this, and it started right after he was discharged. He seems to have flashbacks and does not know what he is doing or where he is. He has PTSD. The treatments at the VA Hospital were horrid, (electric shock) and I can say they probably [were] not any help. He needs some psychiatric care with a doctor that can get through to him somehow, because he just takes a very tough guy stance and will not talk about it. I know for a fact that he just blacks out, and does not know where he is or what he does. I have talked to him on the phone during this last time he was out of prison and I could tell by listening, he was in some mental place. When I was begging him to just go back to his room and play video games I could tell his mind was wandering off somewhere. He would tell me how beautiful the ocean was and finally say that he just could not stay in his room. He has some serious mental problems. He just drifts off into another place and time and does not know where he is at.

"He hasn't had much of a life, most spent in jail or prison and I'm really sorry for the people he offended but at least they live in [a] free country where they can come and go as they want. That's because young men like Michael went to war at age seventeen and some became what he is today or even worse."

Defendant's brother, Steve, in a separate letter to the court dated July 15, 2014, wrote defendant has had "problems with drugs and alcohol and exposing his naked body to females since he came back from the Vietnam war." Steve added his brother "had a terrible experience in Vietnam and

8

since he came home has never been the same." Steve pleaded that his brother receive "treatment not punishment," and recounted the myriad failings of the treatment his brother had received by the VA.

Defendant's own lengthy August, 10, 2014 letter described his remorse in committing the instant offenses and discussed the PTSD he suffered while serving in the Army in Vietnam. He wrote, "What is my problem? I tell you it is from my head problems that developed during basic training, in the U.S. Army."

He added, "I left the Army in 1972. I had been shot at from across the treeline near Quan Tri, a Lieutenant told me in not [too] nice of words, 'Turn this thing around and get us out of here.' We were to pick up three guys and tow their broken down vehicle. To this day I have nightmares about them. We never found them but I see bloodied arms torn off, and green ripped up fatigues wrapped around them. I take alot of Wellbutrin which seems to calm my anxiety but the dreams don't go away. When I came home from the war I went to the V.A. Hospital in Salt Lake City (my home town)[.] By then I thought that I would always have the [headaches] and that there was nothing else to do but overmedicate and drink, of course, to try and get rid of the pain. I started doing more and more exhibitions. I told them at the V.A. and they put me in their [psychiatric] outpatient program (called 'day hospital'). . . . My severe headaches also continued, and my bad dreams although I was reluctant to talk about anything especially dreams. P.T.S.D. was pretty much unheard of [at] that time. There was 'shell shock,' which I didn't have." Defendant went on to write that he served his country "honorably," but that he needed treatment.

The People in their sentencing statement opposed defendant's request to strike his strike priors under *Romero*. The People described in detail

defendant's three prior strike convictions, dating back to 1978, noting defendant exhibited a "high level of violence" in committing these past offenses.

Briefly, in May 1978, defendant assaulted Bonnie M. with the intent to commit rape. In July 1978, he kidnapped 14-year-old Tamera S, and assaulted her with intent to commit rape. When Tamera tried to escape, defendant repeatedly hit her over the head with a rock, nearly killing her.

In 2003, defendant victimized Haley H. and Randie J. He was convicted of another strike for the lewd act on Haley, who was then 11 years old. The People noted defendant had spent most of his adult life in prison and as evidenced by the most recent offense, he continued to "prey on young girls," and has performed poorly while on parole.

The People therefore requested defendant be sentenced to 33 years to life, noting the circumstances in aggravation outweighed the circumstances in mitigation as defined by the Rules of Court. The People's opposition included impact statements from former victims Tamera J. and Haley H., and from defendant's most recent victim, Natalia.

At the October 10, 2014 sentencing hearing, the court noted it had reviewed defendant's probation report; his mitigation statement and request for *Romero* relief, including all the "attachments thereto"; the People's sentencing statement and opposition to the *Romero* motion; and the victim impact statements proffered by the People. The court noted various "parameters" for the hearing, including that defendant was ineligible for probation and was subject to the Three Strikes law. The court thus stated the "real decision" it needed to make was whether to grant defendant *Romero* relief and the sentence it should impose.

After hearing argument from the prosecutor requesting, as noted, that defendant be sentenced to 33 year to life, the court next heard from the defense, including defendant himself, who reiterated he needed help and felt remorse for all of the girls he had victimized over the years, including most recently Natalia.

The court in response stated, "You [i.e., defendant] have what's called a paraphilia and you respond to that and whether the Vietnam war, PTSD or the drug usage that started there or continued drug use thereafter play a role as it relates [to] your ability to fight your urges or not. I'm convinced the urges are there. So you may tell me that you think it's—you thought it was a joke or you think it's a joke [exposing himself to these girls]. It's more than that, however, because it's something driving you."

Defense counsel argued the court should exercise its discretion under *Romero*, strike defendant's prior strikes, and avoid sentencing him to a prison term that essentially would mean he would die in custody. The court noted the "real question" was whether defendant should be given another chance to be paroled. The court noted it was "mindful" that in 2003, when he was convicted under section 288 and received 10 years in prison, defendant then was "eligible for life, and the priors were struck, and he was sentenced to what everyone believed at that time was an appropriate term"; and that it was also mindful of defendant's instant offenses involving Natalia, which the court deemed "predatory in nature," considering defendant's conduct and his history.

The court on the record then weighed its sentencing options. The court noted that to take defendant off the "life track sentencing" requirement, it would need to strike two of his serious felony priors; and that if it did so, given defendant's instant offenses showed "premeditation," and his "failures

11

at probation and/or parole over the course of his criminal history," it would sentence him to the "upper term" and impose a 12 year sentence on count 1, not including defendant's prison priors.

The court added, "So considering the discretion given to me pursuant to . . . *Romero* . . . I'm going to strike the first and second strike priors. Those are the . . . [section] 220 allegations. I'm going to leave the third strike prior [section] 288 from San Diego in 2005. I'm going to impose then the upper term on count one, which pursuant to the application of the strike is 12 years in state prison." The court then noted that, while it had the discretion to "strike or stay" defendant's eight prison priors, it chose "not to" because of defendant's extensive criminal history.[5]

C. Additional Background re:  2019 Petition Hearing

At the July 18, 2019 hearing on defendant's petition, the court at the outset noted it had read defendant's petition and the attachments thereto, and the People's opposition to the petition. The court further noted it had reread defendant's original probation report and various letters, summarized

_____

[5] Indeed, as set out in his probation report, "defendant has a lengthy criminal history, dating back to the early 1970s. Locally, he has never been supervised on formal probation. All of his local felony cases have resulted in State Prison sentences. The defendant has not performed well on parole. He has been sentenced to prison in seven felony cases in California since 1978. With the exception of two of those cases, the defendant's parole was repeatedly revoked and he was returned to prison for parole violations. In the two cases in which he was not returned to prison for parole violations, it appears he committed new felonies while on parole and received new prison terms in those matters. [¶] The defendant was on parole at the time the instant offense was committed. He was sentenced to ten years in prison on 06/15/05. Since 2012, the defendant violated parole four times (including the instant offense) and was returned to custody to serve time for those violations. The defendant stated that he was out of prison from the last violation for about one month prior to the instant offense. He reported that his previous violations were for similar conduct as the instant offense."

12

*ante*, and had received a CD from the VA that was forwarded to defense counsel, who represented it contained "roughly 1,300 pages from the Veterans Administration on Mr. Inman, only some of which is on the issue of PTSD."

Defense counsel at the petition hearing (correctly) noted that defendant's October 2014 sentencing predated the enactment of former section 1170.91. As such, the law in effect at that time was former section 1170.9, which did not apply to defendant because to qualify under this statute, a person had to be probation eligible and actually placed on probation.[6] Defense counsel further (correctly) noted that, with the enactment of former section 1170.91, a person's service-related PTSD as a matter of statutory law could be considered by a court in mitigating a person's sentence even if the person was not eligible for a grant of probation.

Defense counsel, however, "recognize[d] and concede[d] that the Rules of Court were the same and the court could have . . . considered [defendant's]

---

[6] The version of former section 1170.9 applicable when defendant committed his offense in the direct appeal and was sentenced provided in part: "(a) In the case of any person convicted of a criminal offense who could otherwise be sentenced to county jail or state prison and who alleges that he or she committed the offense as a result of sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems stemming from service in the United States military, the court shall, prior to sentencing, make a determination as to whether the defendant was, or currently is, a member of the United States military and whether the defendant may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her service. . . . . [¶] (b) If the court concludes that a defendant convicted of a criminal offense is a person described in subdivision (a), and if the defendant is otherwise *eligible for probation and the court places the defendant on probation*, the court may order the defendant into a local, state, federal, or private nonprofit treatment program for a period not to exceed that which the defendant would have served in state prison or county jail . . . ." (Italics added.)

13

PTSD as a factor in mitigation under the Rules of Court that were in effect at the time. However, the court didn't have statutory mitigation; it had Rules of Court. The court now has statutory mitigation." Defense counsel thus asked the court to set a resentencing hearing under newly amended section 1170.91.

The prosecutor argued defendant was ineligible for resentencing under section 1170.91 because the record from the October 2014 sentencing showed the issue of defendant's service-related PTSD was a focal point of defendant's statement in mitigation, as it was discussed in defendant's probation report, his psychological evaluation, and extensively in letters submitted by family members and defendant. The prosecutor further argued that the court mentioned PTSD during sentencing, and that defendant received "a significantly mitigated sentence" as a result of the court striking under *Romero* two of his serious strike priors so as to allow defendant to avoid a life sentence under the Three Strikes law. Because defendant's PTSD was considered in 2014 at the time of sentencing, the prosecutor requested the petition be denied.

As noted, the same judge who presided over defendant's 2014 sentencing also heard and considered defendant's petition. (See § 1170.91, subd. (b)(2) [providing "[i]f the court that originally sentenced the person is not available, the presiding judge shall designate another judge to rule on the petition"].) The judge stated it had been a "number of years" since defendant's sentencing and his memory of events was "not great, obviously." The court reiterated it went back and reread all the papers from the 2014 sentencing, including the actual sentencing hearing. While mindful defendant then was not eligible for resentencing for service-related PTSD under former section 1170.9, the court noted under the Rules of Court that it

14

could "take into account a variety of factors in mitigation, in deciding not only the issue of whether to grant probation or not, but in trying to make a determination as to what's the appropriate term and, perhaps of greater importance here, in terms of whether or not the strike—any of the particular strikes that would [have] impacted Mr. Inman's sentence."

Based on the trial transcript from the 2014 sentencing hearing, the court continued, "I discuss the service in Vietnam, the PTSD, and drawing a distinction between that and what I would describe then and would still describe now as a paraphilia that results—that I think played a role—significant role in the commission of the offense. . . . . [¶] . . . [¶] At least from my analysis, while the posttraumatic stress would have clearly been a result of somebody serving in Vietnam, and the substance abuse may have been a result, likewise, of something that occurred in Vietnam, the paraphilia involved I don't believe can be directly related to a person's military service. But, more importantly, after the word 'military service,' [section 1170.91 subdivision (b)(1)(A)] says: was not considered as a factor in mitigation at the time of the sentencing.

"And while I agree with [defense counsel] that I did not consider as a factor vis-à-vis the granting of probation or not since [defendant] was statutorily ineligible, I believe that the documents filed, the arguments presented, and the hearing itself point[] out that it was considered a factor in mitigation as it related to what was the appropriate sentence to be imposed and, likewise, whether or not to strike any of his strikes." The court thus found defendant was statutorily ineligible for resentencing under section 1170.91, subdivision (b)(1)(A).

The record shows after defendant addressed the court and why he suffers from service-related PTSD, the court stated, "I've gotten your letters,

15

and I don't want you to misinterpret what I'm saying. I have no doubt in my mind that, as a result of your service in Vietnam, you're suffering from PTSD." While the court admitted it now had more information about defendant's PTSD than it did at the October 2014 sentencing, it added, "I was conscious of that. And I believe when I took you down from a much higher number to a lower number, I took that into account . . . . [¶] . . . [¶] I think I'd [be] lying to myself if I said: Oh, I never gave PTSD a single thought when I first sentenced you. I think I did. I think I knew: Could I give you probation, as the old statute said? No, I couldn't. I knew that. But I think I took into account to try and get a number down, at least from my perspective, knowing what happened on the offense, knowing your criminal record, which you and I have to agree is pretty [extensive] — to try to get it down to a number I thought was the right number. I *don't believe I could go lower than that.*" (Italics added.)

D. <u>Analysis</u>

Here, we conclude there is ample evidence from defendant's October 2014 sentencing hearing to support the finding in connection with defendant's July 18, 2019 petition that the "circumstance of suffering from . . . traumatic brain injury, [PTSD], substance abuse, or mental health problems as a result of [his] military service" *was considered* "as a factor in mitigation at the time of sentencing." (§ 1170.91, subd. (b)(1)(A).)

Initially, we note from the plain language of section 1170.91, subdivision (b)(1) that it is defendant's burden to meet this condition; and that this burden requires a showing from the "circumstances" that it "was not considered" in mitigation. (See *People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414 (*Verduzco*) [recognizing the "first step in statutory construction is to examine the statutory language and give it a plain and commonsense

meaning"].)  We further note from the plain language of section 1170.91, subdivision (b)(1)(A), that a defendant's military service is only "*a* factor" that must have been considered at the time of sentencing (see *ibid.*, italics added); and not "*the* factor," when sentence was imposed.

In addition, analyzing the law as it applied in October 2014, the *only* way the court could have considered service-related PTSD as a mitigating factor in sentencing defendant was through the Rules of Court, which the record shows defendant's mitigation statement covered when it noted defendant "was suffering from a mental or physical condition that significantly reduced culpability for the crime."  (Rule 4.423(b)(2).)  The record also shows defense counsel and the court, both at the time of sentencing and years later in connection with the petition, recognized that defendant's only avenue to mitigation for service-related PTSD was through the Rules of Court.

As summarized *ante* in detail, defendant's mitigation statement clearly shows defendant's service-related PTSD was not only "a factor" the court considered (see § 1170.91, subd. (b)(1)(A)) at his 2014 sentencing, but was front and center in defendant's request at that hearing to strike his serious strike priors in order to avoid a life sentence.

As noted, defendant's mitigation statement included four exhibits, each of which raised and specifically addressed his service-related PTSD, as summarized *ante*.  They included the probation officer's report, which chronicled defendant's drug use while serving in Vietnam and his PTSD as a result of his service; defendant's psychological evaluation, which stated defendant suffered from PTSD and explained in detail defendant's experiences in Vietnam; a letter from his older sister Vickie, in which she described in detail her brother's assignment in Vietnam as an ambulance

17

driver, his drug use, his possible exposure to Agent Orange, and how her brother started "to get in trouble for dropping his pants after returning from Nam" because "[s]omething horrific must have happened to him" there; a letter from defendant's brother Steve who, like their sister, addressed defendant's "terrible experience[s]" while serving in Vietnam, and who pleaded with the court that defendant receive "treatment not punishment"; and a lengthy handwritten letter prepared by defendant, who described being shot at from across a tree-line while serving in Vietnam and being ordered by a superior officer to leave three wounded American soldiers on the battlefield, which defendant stated still caused him nightmares and anxiety.

What's more, the record shows the court at the October 2014 sentencing specifically noted that it had read defendant's mitigation statement *and* supporting exhibits; that in determining an appropriate sentence it recognized defendant's claim he suffered from PTSD as a result of serving in Vietnam; but that the court nonetheless was concerned by defendant's recidivist behavior, noting it believed defendant's condition was not the result of PTSD and/or the war, but rather because defendant had paraphilia. Mindful that defendant's 2014 convictions did not involve serious sexual misconduct, the record also shows the court struggled whether to impose a life term, which would have meant defendant essentially would die in custody, or strike two of defendant's prior strikes, which would give defendant at least another chance at parole. Ultimately, the court chose the latter.

We conclude as a matter of statutory interpretation (see *Verduzco, supra*, 210 Cal.App.4th at p. 1414); and, from our extensive review of the record, summarized *ante*; that defendant's service-related PTSD was considered "as a factor in mitigation" at his 2014 sentencing for purposes of

18

subdivision (b)(1)(A) of section 1170.91.  We thus further conclude the court properly denied defendant's petition for resentencing.[7]

## II

## Prison Priors Under Newly Amended Section 667.5

As noted, the People in their respondent's brief suggested in a footnote that six of defendant's seven prison priors no longer could serve to enhance his sentence based on newly amended section 667.5, subdivision (b).

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years.  [Citation.]  Courts nevertheless had discretion to strike that enhancement pursuant to section 1385, subdivision (a).  [Citation.]  Effective as of January 1, 2020, Senate Bill No. 136 . . . amends section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b)." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681 (*Jennings*).)  Because Senate Bill No. 136 mitigates punishment, it applies retroactively under *In re*

---

[7]    In light of our decision, we deem it unnecessary to address the People's alternate contention that remand for resentencing would be a futile act in this case because the trial judge, in denying defendant's petition at the July 18 hearing, and after noting defendant's extensive criminal history, stated, "I *don't believe I could go lower than that*" when discussing why he had sentenced defendant in 2014 to 20 years and not life.  (Italics added.)  (See *People v. Johnson* (2019) 32 Cal.App.5th 26, 69 [noting we "need not remand the instant matter if the record shows that the superior court 'would not . . . have exercised its discretion to lessen the sentence' "]; *People v. McVey* (2018) 24 Cal.App.5th 405, 419 [concluding no remand where, given the trial court's express consideration of the matter, there appears no possibility that, if the case was remanded, the trial court would exercise its discretion to strike the enhancement].)

*Estrada* (1965) 63 Cal.2d 740 to all cases *not yet final* as of the bill's effective date. (*Jennings*, at pp. 681–682.)

Here, as we have repeatedly noted, defendant's sentencing took place in 2014. We decided the direct appeal on September 11, 2015. (See D066916.) "[A] Court of Appeal decision . . . is final in that court 30 days after filing." (Rule 8.366(b)(1).) "A petition for review [to the California Supreme Court] must be served and filed within 10 days after the Court of Appeal decision is final in that court." (Rule 8.500(e)(1).)

The defendant's appeal in D066916 was thus final years before Senate Bill No. 136 took effect. As such, and despite the People's suggestion otherwise,[8] defendant is *not* entitled to the retroactive application of newly amended section 667.5 as it pertains to his seven strike priors. (See *Jennings*, *supra*, 42 Cal.App.5th at pp. 681–682.)

---

[8] It is axiomatic that as a court of review, we are not bound to follow the meaning of a statute sought by a party. (See *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 327 [rejecting the concession of the defendant made during oral argument regarding the meaning of the word "tender" in Civil Code section 2983.4, a statute awarding a party prevailing under the Automobile Sales Finance Act reasonable attorney fees and costs]; see also *R.J. Land & Associates Construction Co. v. Kiewit–Shea* (1999) 69 Cal.App.4th 416, 427, fn. 4 [recognizing the interpretation and applicability of a statute is a question of law and further noting in the "public interest[,] we have discretion to reject [a party's] concession[ ] because our function to correctly interpret a statute is not controlled by [a party's] concession of its meaning"].)

DISPOSITION

The trial court's order denying the petition for resentencing under section 1170.91 is affirmed.

BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.